UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


STEVEN CLARK                    :
                                :              PRISONER
        v.                      :       Case No. 3:03CV795(DFM)
                                :
FREDERICK LEVESQUE, et al.      :


RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Steven Clark ("Clark") filed this civil rights action pro se pursuant to 28 U.S.C. § 1915.  He alleges that defendants, Frederick Levesque, Lynn Milling, Brian Murphy and John Armstrong, violated his right to freely exercise his religion by transferring him to a correctional facility in Virginia with a strict grooming policy.  Defendants have filed a motion for summary judgment.  For the reasons that follow, defendants' motion is granted.

I.   Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court

must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  The court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought."  Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004).  A party may not create a genuine issue of material fact by resting on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the

2

strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.  Facts[1]

While John Armstrong was the Commissioner of the Department of Correction, Connecticut experienced a rapid increase in inmate population.  The population increase followed a period, from the late 1980s to early 1990s, during which the Connecticut Department of Correction experienced its greatest violence.

Because the inmate population exceeded available fixed bed space, temporary makeshift housing areas were set up in spaces such as gymnasiums, program spaces and staff offices.  The lack of appropriate secure housing along with a strain on resources to

---

[1]The facts are taken from defendants' Rule 56(a)1 Statement [doc. #26-2] and the affidavits of Donna Wnuk [doc. #26-3], Fred Levesque [doc. #26-4], Brian K. Murphy [doc. #26-5], John J. Armstrong [doc. #26-6] and Lynn Milling [doc. #26-7].  On June 16, 2005, along with their motion for summary judgment, defendants filed the required notice [doc. #26-8] informing Clark of his obligation to respond to the motion for summary judgment and of the contents of a proper response.  The court granted Clark two extensions of time, until November 10, 2005, to file his response.  To date, however, Clark has not responded to the motion for summary judgment.  Accordingly, defendants' facts are deemed admitted.  See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.")

deliver appropriate service and programs to the inmates resulted in inmate unrest and a potential for violence.  The housing shortfall was especially acute for high security inmates. Correctional officials had difficulty maintaining the inmate classification system because they could not house all high security inmates in appropriate cells.

To remedy this situation, the Connecticut legislature authorized Commissioner Armstrong to enter into contracts with other governmental or private vendors to send 500 Connecticut inmates out of state.  In 2001 and 2002, Commissioner Armstrong entered into a contract with the Commonwealth of Virginia to house 500 Connecticut inmates at the Greensville CC in Jarratt, Virginia.  The contract provided that inmates would be transferred to Virginia for a minimum of one year.  If an inmate remained discipline free and exhibited positive conduct throughout the year, he could be approved for return to Connecticut.

Defendant Milling is the Connecticut Department of Correction Compact Supervisor.  In this capacity, she supervises interstate matters by communicating with her counterparts in other jurisdictions to arrange for the safe, secure and orderly transfer of inmates between the jurisdictions.

Defendant Levesque is the Connecticut Department of

4

Correction Director of Offender Classification and Population
Management.  He supervises all issues relating to inmate
classification and transfers from one correctional facility to
another.  He is defendant Milling's direct supervisor.  In 2001
and 2002, defendant Levesque's duties did not include reviewing
and screening inmates for classification and transfer to
Virginia; these tasks were performed by counselors and
subordinate staff in defendant Levesque's unit.

     The plaintiff Clark is a Rastafarian with dreadlocks, a
beard and mustache.  Clark was a level 4 inmate, confined at
Cheshire Correctional Institution, when he was reviewed for
transfer.  After staff determined that he met the objective
criteria, Clark was transferred to Greensville CC.  The transfer
criteria did not include consideration of an inmate's religious
affiliation, race or ethnicity.

     The contract between Connecticut and Virginia provided that
security decisions, including those related to balancing the free
exercise of religion by Connecticut inmates and the security of
Greensville CC, were left to Virginia correctional officials.
Thus, while in Virginia, Connecticut inmates were subject to
Virginia Department of Correction policies, including DOP 864,
the Virginia Department of Correction grooming policy.  This
policy required inmates to be clean-shaven and have short hair.

5

On April 4, 2002, upon his arrival at Greensville CC, Clark was given a direct order to cut his hair.  Clark stated that it was against his religion to shave or cut his hair and refused the order.  Correctional staff issued a disciplinary report for disobeying a direct order and placed Clark on pre-hearing detention status.  On April 16, 2002, the disciplinary hearing officer found Clark guilty of the charge after Clark admitted that he heard the order and refused to comply.  In his defense, Clark stated that it was unconstitutional not to have the right to exercise his religious beliefs.  Clark was sanctioned with five days in isolation.

On April 10, 2002, Clark was given a second direct order to cut his hair and shave so he would be in compliance with the grooming policy.  When Clark refused, he was issued a second disciplinary report for disobeying a direct order.  On May 8, 2002, Clark was found guilty and received a sanction of fifteen days in isolation.  This penalty was later reduced to ten days in isolation.

On April 19, 2002, Clark was given a third direct order to cut his hair and shave so he would be in compliance with the grooming policy.  Clark refused and received a third disciplinary report.  On May 15, 2002, Clark was found guilty and sanctioned with fifteen days in isolation.

6

Because Clark was found guilty of three disciplinary reports since his arrival at Greensville CC, Virginia correctional officials held a hearing and determined that Clark should be placed on Isolation Status until he complied with the grooming policy.  Because Clark refused to comply with the Greensville CC rules, the Virginia correctional officials also recommended to Connecticut officials that they return Clark to Connecticut after only a few months, despite the contract requirement of a minimum one year stay.

On June 7, 2002, Clark was returned to Connecticut and housed at MacDougall-Walker Correctional Institution pending a classification hearing for placement in the Chronic Discipline Unit.  The classification hearing was held on June 17, 2002.  In a written statement, Clark admitted that he refused three direct orders that he comply with the grooming policy and that he had received a fourth disciplinary report for refusing to provide a urine sample for drug testing.  The hearing officer recommended that Clark be placed in the Chronic Discipline Unit.  Defendant Milling recommended that Clark be classified as a Chronic Discipline inmate.  On June 17, 2002, defendant Levesque approved the classification and placement of Clark in the Chronic Discipline Unit because of his poor disciplinary record while confined at Greensville CC.

III. Discussion

Clark asserts four claims in his complaint:  (1) defendants Levesque and Milling violated his right to freely exercise his religion, as protected by the First Amendment and the Connecticut Constitution, when they transferred him to Greensville CC and classified him as a Chronic Discipline inmate upon his return; (2) his confinement in the Chronic Discipline Unit violated his Fourteenth Amendment right to due process; (3) defendants retaliated against him for practicing his religion; and (4) defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.

Defendants raise eight grounds in support of their motion for summary judgment:  (1) defendants had no knowledge of any clearly unconstitutional policies in the Virginia Department of Correction because the courts have found the grooming policy to be constitutional and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq.[2] ("RLUIPA"), does not require that security interests be subordinate to religious claims, (2) Clark has not alleged an

---

[2]RLUIPA protects the religious exercise of institutionalized persons where the substantial burden is imposed in a program or activity that receives Federal financial assistance or the substantial burden affects or removal of that substantial burden would affect commerce with foreign nations, among the several States, or with Indian tribes. 42 U.S.C. § 2000cc et seq.

Eighth Amendment injury or any claim for relief, (3) Clark's damages claims is barred because he has not suffered a physical injury as required by 42 U.S.C. § 1997e(e), (4) Clark's remaining claims are without merit, (5) defendants are not liable on a theory of respondeat superior, (6) Clark's retaliation claim lacks merit, (7) defendants are protected by qualified immunity and (8) Clark's state law claims are without merit.

I.  <u>Free Exercise of Religion Claim</u>

Clark alleges that defendants Levesque and Milling violated his right to freely exercise his religion by transferring him to a correctional facility with a strict grooming policy.  In opposition, defendants present two arguments.  First, they contend that Clark's rights were not violated because DOP 864 has been upheld in the courts and there is no constitutional requirement that security interests must be subordinate to religious practices.  Second, defendants were not aware of any unconstitutional policies in Virginia.  The court construes the latter argument as one invoking qualified immunity.

The Free Exercise Clause of the First Amendment[3] provides

---

[3]The First Amendment to the United States Constitution provides, in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...."  It applies to the states via the Fourteenth Amendment.  <u>See</u> <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303 (1940).

that the government cannot adopt laws designed to suppress religious beliefs or practices.  See <u>Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520, 523 (1993).  Although this protection applies to prisons, the application of the law is limited by considerations of institutional safety and security with due deference being afforded decisions by the prison administration.  See <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348-49 (1987) (holding that prison regulation limiting First Amendment rights is valid if reasonably related to legitimate penological interests).

In 1998, the Fourth Circuit, which includes Virginia, upheld the South Carolina Department of Corrections grooming policy which required that all male inmates be clean shaven and keep their hair short.  See <u>Hines v. South Carolina Dep't of Corrections</u>, 148 F.3d 353, 357 (4th Cir. 1998).  The record in <u>Hines</u> indicates that the South Carolina grooming policy was a neutral security regulation designed to help eliminate contraband, reduce gang activity, identify inmates and maintain order in the South Carolina prisons.  There was no suggestion that the grooming policy was designed to burden the free exercise rights of any inmate or motivated by the religious practices of any inmate.  See <u>id.</u> at 357-58.  See also <u>Morrison v. Garraghty</u>, 239 F.3d 648 (4th Cir. 2001) (acknowledging limited time, space

and staffing available, recognizing that the Greensville CC policy limiting personal property would limit the number of dangerous articles in prison, and holding that denial of exemption for religious personal property did not violate inmate's right to equal protection of the law).

The Virginia Department of Correction implemented its grooming policy, DOP 864, after the Fourth Circuit upheld the South Carolina policy. See Jackson v. District of Columbia, 254 F.3d 262 (D.C. Cir. 2001) (noting that DOP 864 was implemented on November 15, 1999). The policy has been upheld as constitutional. See Toles v. Young, No. Civ.A. 7:00-CV-210; 2002 WL 32591568 (W.D. Va. Mar. 6, 2002) (holding that DOP 864 does not violate inmate's free exercise right under the First Amendment or violate RLUIPA); DeBlasio v. Johnson, 128 F. Supp. 2d 315 (E.D. Va. 2000) (holding that DOP 864 does not violating inmates' free exercise rights and the sanctions for violation of the policy do not violate the Eighth Amendment), aff'd, 13 Fed. Appx. 96 (4th Cir. 2001).

The facts in Toles are remarkably similar to the facts in this case. Toles, a Connecticut prisoner, was a Hebrew Israelite Nazzarite whose religious beliefs prevented him from cutting his hair or shaving. Toles was transferred to the Wallens Ridge State Prison in Virginia pursuant to a 1999 contract between the

Connecticut and Virginia Departments of Correction.  Upon his
arrival in Virginia, he was informed of the grooming policy.
Unlike Clark, Toles agreed to submit to grooming procedures.
However, he filed suit challenging the grooming policy as
violating his right to freely exercise his religion under the
First Amendment and RLUIPA.  See 2002 WL 32591568 at *1-*2.  In
holding that the grooming policy did not violate Toles' free
exercise rights, the court noted that Toles was not prevented
from exercising his religious beliefs.  He was offered a choice.
He could comply with the grooming policy and be housed with the
general prison population or practice this particular tenet of
his beliefs and be housed in segregation.  See 2002 WL 32591568
at *6.

       Clark has not presented any evidence in opposition to the
motion for summary judgment to support his claim that the
Virginia grooming policy violated his rights under the First
Amendment.  Because the cases considering the issue all have held
that the grooming policy does not violate the First Amendment
rights of a state inmate, the court concludes that Clark's First
Amendment rights were not violated by the Virginia grooming
policy.

       Clark does not mention RLUIPA in his complaint.  However,
pro se complaints must be construed liberally.  See Burgos v.

Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Thus, the court will

consider whether the plaintiff's transfer violated his rights

under RLUIPA.

The grooming policy has not been held to violate RLUIPA.  In

Toles, the Western District of Virginia held that the grooming

policy did not violate RLUIPA because, although the grooming

policy substantially burdened Toles' exercise of his religious

beliefs, it served a compelling state interest to improve prison

security and was the least restrictive means to accomplish that

purpose.  See 2002 WL 32591568 at *9.

The Supreme Court recently has considered the interaction

between RLUIPA and a prisoner's right to practice his religion

with regard to a claim under the Establishment Clause of the

First Amendment.  See Cutter v. Wilkinson, ___ U.S. ___, 125 S.

Ct. 2113 (2005).  The Court acknowledged that in enacting RLUIPA,

Congress "anticipated that courts would apply the Act's standard

with 'due deference to the experience and expertise of prison and

jail administrators in establishing necessary regulations and

procedures to maintain good order, security and discipline,

consistent with consideration of costs and limited resources.'"

Id. at 2123 (citation omitted).  Thus, the Court did "not read

RLUIPA to elevate accommodation of religious observances over an

institution's need to maintain order and safety."  Id. at 2122.

The court concludes that the Virginia grooming policy also did not violate the plaintiff's rights under RLUIPA.

The court turns to the question of whether Clark's transfer violated his rights under the First Amendment or RLUIPA.  The plaintiff has no constitutional right to be confined in any particular prison or even in any particular state.  See <u>Olim v. Wakinekona</u>, 461 U.S. 238, 248 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules).

Clark has not presented any evidence in opposition to the motion for summary judgment to support his claim that his transfer violated his rights under the First Amendment or RLUIPA. Based on the court decisions upholding the grooming policy, the Supreme Court's determination that inmates' rights to freely exercise their religious beliefs do not supersede prison officials' interests in safety and security and the lack of a constitutional interest in avoiding transfer to any other correctional facility, this court concludes that Clark has not met his burden of demonstrating a genuine issue of material fact

14

on his claim that defendants Levesque and Milling violated his
First Amendment or RLUIPA rights when they authorized his
transfer to Virginia.  Defendants' motion for summary judgment is
granted as to these claims.

Defendants also argue that they were unaware of any
unconstitutional policies in Virginia.  As noted above, the court
construes this contention as a claim for qualified immunity.

The doctrine of qualified immunity "shields government
officials from liability for damages on account of their
performance of discretionary official functions 'insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known.'"  Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995)
(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

> [I]f a violation could be made out on a
> favorable view of the parties' submissions,
> the next, sequential step is to ask whether
> the right was clearly established.  This
> inquiry, it is vital to note, must be
> undertaken in light of the specific context
> of the case, not as a broad general
> proposition.

Saucier v. Katz, 533 U.S. 194, 201 (2001).

At the time Clark was transferred to Greensville CC, no
court had held the grooming policy unconstitutional as applied to

state inmates.[4]  Thus, there was no way that defendants should

have inferred that transferring Clark to Greensville would

violate his First Amendment right to freely exercise his

religious beliefs.[5]  Even if the grooming policy were now found

to be unconstitutional, the defendants would be protected by

qualified immunity.

II.  <u>Fourteenth Amendment Claim</u>

Clark claims that his confinement in the Chronic Discipline

---

[4]One court had held that DOP 864 violated the rights of
federal Rastafarian and Muslim prisoners under RFRA, the
Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq.
This statute was declared unconstitutional as applied to states.
<u>See</u> <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997).
  Unlike the choice presented to Clark, the correctional
facility at issue did not give inmates the alternative of
complying with the grooming policy or confinement in segregation.
Instead, the facility required both mandatory hair cuts and
shaves as well as confinement in segregation for violating the
grooming policy.  In addition, the court relied on the fact that
the Federal Bureau of Prisons had demonstrated ability to screen
and routinely designate inmates to particular facilities to
enable them to participate in various programs.  <u>See</u> <u>Gartrell v.
Ashcroft</u>, 191 F. Supp. 2d 23 (D.C. 2002).

[5]In a decision issued after Clark was returned to
Connecticut, the Second Circuit noted that "[p]recedent suggests
that inmates have a right not to be disciplined for refusing to
perform tasks that violate their religious beliefs."  <u>MacEachin
v. McGuinnis</u>, 357 F.3d 197, 205 (2d Cir. 2004).  The court
stated, however, that an inmate's success in pursuing a First
Amendment free exercise claim depended on whether the
correctional defendants could show a reasonable relationship
between the policy and legitimate penological interests.  <u>See</u> <u>id.</u>
at 205 n.8 (citing <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987)).
Thus, in light of the Fourth Circuit decisions, defendants still
would be entitled to qualified immunity under current Second
Circuit law.

Unit after his return from Virginia violated his right to due
process.

To state a claim for violation of procedural due process,
Johnson first must show that he had a protected liberty interest
and, if he had such an interest, that he was deprived of that
interest without being afforded due process of law.  See Tellier
v. Fields, 230 F.3d 502, 511 (2d Cir. 2000) (citations omitted).
In accordance with the Supreme Court's decision in Sandin v.
Conner, 515 U.S. 472 (1995), the Second Circuit applies a two-
part test to determine whether an inmate possesses a protected
liberty interest.  See id.  An inmate has a protected liberty
interest "only if the deprivation . . . is atypical and
significant and the state has created the liberty interest by
statute or regulation."  Id. (citations and internal quotation
marks omitted).

Clark challenges the fact that he was assigned to the
Chronic Discipline Unit for 90 days.  Inmates should reasonably
anticipate confinement in segregation.  See Russell v. Scully, 15
F.3d 219, 221 (2d Cir. 1993); see also Frazier v. Coughlin, 81
F.3d 313, 317-18 (2d Cir. 1996) (holding that 120 day confinement
in segregation followed by 30 day loss of recreation, commissary
privileges, packages and telephone use did not state a cognizable
claim for denial of due process); Rosario v. Selsky, No. 94 Civ.

6872, 1995 WL 764178, at *3 (S.D.N.Y. Dec 28, 1995) (holding that 120 days confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison).

Clark has alleged no facts suggesting that the sanctions he received were qualitatively different from ordinary prison life. Thus, the court concludes that Clark's ninety day confinement in segregation is not an atypical and significant hardship and does not give rise to a liberty interest under <u>Sandin</u>.

Further, even if a ninety-day confinement in the Chronic Discipline Unit were considered an atypical and significant hardship, Clark was afforded due process.  He was provided a hearing and an advocate who recommended that he be returned to general population.  Although the advocate was unable to appear at the hearing, a substitute advocate appeared and read the recommendation.  Clark does not identify any deficiencies with the process afforded at the hearing.

The court concludes that Clark has failed to state a claim for denial of due process.  This claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the court to dismiss at any time allegations that fail to state a claim upon which relief may be granted.

III. Retaliation Claim

Clark contends that defendants retaliated against him for practicing his religion.  To state a claim for retaliation, Clark must allege facts demonstrating "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).  Because of the "ease with which claims of retaliation may be fabricated," however, the court "examines prisoners' claims of retaliation with skepticism and particular care." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).

Clark alleges that he was placed in the Chronic Discipline Unit upon his return to Connecticut because he exercised his religious beliefs while in Virginia.  Defendant Levesque has provided his affidavit stating that upon his return, Clark was classified in the same manner as any other inmate who accumulated three disciplinary reports in one month.  Clark's reason for the conduct that resulted in the issuance of the disciplinary reports was not considered.  Defendant Levesque stated that religious exemptions to the disciplinary and classification systems are not

19

permitted because such exemptions could be used to manipulate the system and avoid transfers and to undermine the orderly administration of the prisons and the safety and security of inmates and staff.  (See Levesque Affidavit, Doc. #26-4, at ¶¶ 19-21.)

Clark has provided no contrary evidence in opposition to the motion for summary judgment.  His allegation of retaliatory conduct is insufficient to meet Clark's burden of providing evidence to demonstrate a genuine issue of material fact regarding his retaliation claim.  Defendants' motion for summary judgment is granted as to the retaliation claim.

IV.  Eighth Amendment Claim

Finally, Clark alleges that his transfer to Greensville CC violated his Eighth Amendment right to be free from cruel and unusual punishment.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Rhodes v. Chapman, 452 U.S. 337, 351 (1981).  To state an Eighth Amendment claim, an inmate must allege facts demonstrating failure of prison officials to provide for inmates' "basic human needs-e.g., food, clothing, shelter, medical care, and reasonable safety."  DeShaney v. Winnebago

20

County Dept. of Social Servs., 489 U.S. 189, 200 (1989). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson v. Seiter, 501 U.S. 294, 305 (1991).

An inmate may prevail on an Eighth Amendment claim "only where he proves both an objective element–that the prison officials' transgression was 'sufficiently serious'–and a subjective element–that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The objective element is satisfied where the inmate shows that the deprivation he alleges is sufficiently serious, i.e., that his confinement under the alleged conditions violates contemporary standards of decency. The subjective element requires the inmate to show that correctional officials were aware of and disregarded a substantial risk of serious harm.  See id. at 185-86.  Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... must also draw that inference." Farmer, 511 U.S. at 837.

An inmate has no inherent right to remain in any particular

correctional facility.  See Olim v. Wakinekona, 461 U.S. 238, 248 (1983) (inmates have no right to be confined in a particular state or a particular prison within a given state); Meachum v. Fano, 427 U.S. 215, 225 (1976) (transfer among correctional facilities, without more, does not violate inmate's constitutional rights, even where conditions in one prison are "more disagreeable" or the prison has "more severe rules); see also Asquith v. Department of Corrections, 186 F.3d 407, 410, 411 (3d Cir. 1999) (holding that inmates have no protected liberty interest in remaining in a preferred correctional facility); Russell v. Scully, 15 F.3d 219 (2d Cir. 1993) (inmates have no due process interest in being confined in a certain location within a prison).

Clark has provided no evidence in opposition to defendants' motion for summary judgment suggesting that he was transferred for any improper reason.  Because Clark has no constitutionally protected right to remain in a particular correctional facility or be transferred to another, there is no legal basis for his claim.  See Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987) ("complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning").  Thus,

defendants' motion for summary judgment is granted as to Clark's Eighth Amendment claim regarding his transfer.

V.   State Law Claims

Clark also asserts state law claims for violation of his rights under the Connecticut Constitution.  Supplemental or pendent jurisdiction is a matter of discretion, not of right. See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966). Where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts.  See 28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).  Because the court has dismissed all federal law claims, it declines to exercise supplemental jurisdiction over Clark's state law claims.

IV.  Conclusion

Defendants' motion for summary judgment [**doc. #26**] is **GRANTED**.  Clark's claim for denial of due process is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and the court declines to exercise supplemental jurisdiction over any state law claims. The Clerk is directed to enter judgment in favor of defendants and close this case.

This is **not** a recommended ruling.  The parties consented to the exercise of jurisdiction by a magistrate judge and the case

was transferred to the undersigned for all purposes including the entry of judgment on February 4, 2004.  (See Doc. #16].

**SO ORDERED** this 17th day of March, 2006, at Hartford, Connecticut.

/s/ Donna F. Martinez
DONNA F. MARTINEZ
UNITED STATES MAGISTRATE JUDGE